IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALIXATH XABANDITH, | No. CIV S-07-1889-FCD-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| A. HEDGPETH, | |
| Respondent. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1) and respondent's answer (Doc. 11).

///
///
///
///
///
///
///

1

# I. BACKGROUND

A. **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Defendants [Xabandith and Phonthachack] and other members of the El Camino Crips (ECC) street gang provoked a fight in a billiards parlor; during the ensuing fracas, Xabandith fired a gun and wounded a bystander.
> On the evening of January 19, 2002, Liza Miranda, Liza's then-husband Mario Miranda, and Liza's cousins, Gerald Natad and Joshua Rios, went to Family Billiards on El Camino Avenue. Natad and Miranda apparently had hairstyles which could be construed to indicate association with a Mexican gang; although both denied they were gang members, Natad had been "profiled" by police as a gangster, and Miranda – a reluctant witness – became associated with a gang after this incident.
> Xabandith and some of his group began "mad dogging," "mean mugging" or staring hard at Natad's group. After a while, the Asians left their tables and went outside; about four more carloads of Asians then arrived. Asians outside stared inside and Natad's group was afraid to leave.
> Phonthachack walked into the parlor and Liza reminded him that they had attended school together; they shook hands. Liza introduced her husband Mario, but Phonthachack refused to shake his hand and instead asked what was their gang allegiance. Mario and Natad said they were not in a gang and did not want any problems. A few minutes later, Xabandith and at least one other Asian man joined Phonthachack; the other man made angry gestures and challenged Natad to fight. Phonthachack spoke in Lao to Xabandith and as Natad extended his hand in friendship toward one of the men, Xabandith punched Natad in the face from the side with a closed fist. Natad balled his fists, but Mario threw him to the ground and yelled "Gun."
> At about that point, many Asian men poured into the parlor and several, including Phonthachack, began throwing billiard balls at Mario and Joshua; others employed billiard cues in a general melee. Both Joshua and Mario were hit with billiard balls, and Liza was pushed when she tried to render aid. Xabandith pulled out a pistol and – holding it sideways or "gangster" style – fired several shots, wounding Tina Allman, who was standing by the jukebox and had nothing to do with the fight. At some point Xabandith said "'This is ECC Crip, Cuzz.'"

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

    Later at home, Liza retrieved her high school yearbook, and when a peace officer arrived to speak with her and Mario, they were able to point out Phonthachack's photograph. Natad and Joshua, too, picked out Xabandith as the shooter. Liza identified Phonthachack as the "instigator" and Mario used similar language to describe his role. Mario had also identified Xabandith as the shooter.

    A few days later, Liza, Mario, and other family members were shopping at Target when they spotted Xabandith and some of his companions, who chased them into their car and threw gang signals at them. The next day, Liza, Mario, and Joshua reviewed photographs and positively identified Xabandith as the shooter.

    A gang expert explained "mad dogging" or "mean mugging" is a challenge which generally leads to violence. ECC was a Laotian gang, the members of which use violence and weapons to enhance their reputations and instill fear in others. Both defendants had been "validated" as members in 1996. The expert described crimes by the gang, discussed below, and opined that the instant offense benefitted the gang.

    William Yurgionas testified the shooter was Samoan, although he admitted he had contemporaneously told an officer the shooter was Asian.

    Phonthachack testified he was not a gang member but associated with the gang (despite a probation condition that he not do so) and he admitted that he had claimed to be a member and that he was in various gang photographs. He saw the interaction with the "Mexicans" and claimed he tried to smooth things over, but he admitted refusing to shake Mario's hand, and asking where he was from, then speaking to his companions in Laotian, telling them Natad's group could be armed. Phonthachack admitted there were about 20 to 30 people outside before Xabandith punched Natad and the fight began. He claimed a Samoan or Tongan fired the gun. He was impeached with two prior theft-related crimes.

  **B.**  **Procedural History**

  Petitioner was convicted following a jury trial of attempted murder. The jury also found true firearms and gang affiliation allegations. Petitioner was sentenced to 42 years to life in state prison. The California Court of Appeal affirmed the conviction and sentence in a reasoned opinion issued on March 16, 2006. The California Supreme Court denied direct review without comment or citation on June 14, 2006. Petitioner did not file any state post-conviction actions. Respondent concedes exhaustion.

/ / /

/ / /

/ / /

3

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus,

under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means only those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court

5

either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

/ / /

/ / /

/ / /

/ / /

/ / /

### III. DISCUSSION

Petitioner claims there was insufficient evidence to support the gang affiliation enhancement, which requires two or more predicate offenses to establish a pattern of criminal activity. Specifically, he argues that the California Court of Appeal erred in concluding that the current offense qualified as a predicate offense even though the prosecution did not charge the current offense as a predicate offense. Respondent argues that any error was harmless.

As to this claim, the state court held:

> Both defendants contend no substantial evidence supports the gang enhancement. . . . [¶] We conclude that the prosecution's failure of proof of one of the predicate offenses necessary to establish the gang enhancement did not cause prejudice. We note . . . that the exact same mistake occurred in a separate case involving Xabandith, where we also found the error to be harmless. (citation omitted). A gang enhancement results in serious penal consequences; accordingly, in pleading such enhancement and preparing for trial, a prosecutor must take care to be prepared to prove all the elements thereof.
>
> To prove defendants committed the crime for the benefit of a street gang, one element the People had to prove was that gang members had engaged in a "pattern of criminal activity," which is defined as the commission of at least two statutorily-enumerated offenses, known as "predicate" offenses, committed by gang members. (citations omitted).
>
> The People tendered two – and only two – predicate offenses, the same offenses it used in *Xabandith I*. One was an assault with a deadly weapon by Stevie K. in May 2001. Defendants do not challenge this predicate offense.
>
> The other predicate offense was committed by Xabandith's younger brother, Natason Xabandith. Possession of a firearm . . . by a minor, qualifies as a predicate offense. (citation omitted).
>
> An officer testified that on September 12, 2000, he and another officer arrested Natason, then in the company of other gang members, because he had a gun wrapped in a rag and he pulled the gun from his waistband; Natason was convicted of "possession of a gun." However, as in *Xabandith I*, the prosecution in this case failed to prove exactly what crime Natason committed and failed to produce any evidence of Natason's age, from which the jury might infer he had been a juvenile when he possessed a gun. There are many statutes which prohibit "possession of a gun" in various ways, convictions for which do not qualify as predicate offenses under the gang statutes. (citations omitted). Although the prosecutor argued that the crime had been described as a minor in possession of a firearm, she failed to prove it, and thus failed to prove Natason's conviction qualified as a predicate offense.

/ / /

> The Attorney General in effect concedes there is no evidence in the record to support the finding that Natason's offense was possession by a minor of a concealable firearm. The Attorney General argues any error was harmless because the current offense could be used to show a pattern of criminal activity. We agree.
>
> In general, a qualifying charged offense may be used as a predicate offense to prove a pattern of criminal gang activity. (citations omitted). However, the People did not charge the current offense as a predicate offense in this case. Defendants assert that it would violate due process principles to sustain the enhancement on appeal based on a predicate offense neither pleaded nor presented to the jury at trial. We do not agree.
>
> The trial court instructed the jury on the charged offense of attempted murder, and the jury convicted defendants. The jury was also instructed that in order to sustain the gang enhancement, it had to find the attempted murder was committed "for the benefit of, at the direction of, or in association with a criminal street gang," and "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (citation omitted). A pattern was defined as "the commission of two or more of the following crimes, namely, Assault with a Firearm or Juvenile in Possession of a Firearm" if committed within certain times.
>
> Defendants were put on notice by the information that the People sought enhanced punishment because the charged crime of attempted murder was committed to benefit a street gang, and the jury's findings show it concluded beyond a reasonable doubt that that charged crime was a gang offense. Further, at the preliminary hearing (obliquely) and in the People's trial brief (explicitly) the People raised the point that the charged offense could be used as a predicate offense, were it proven to be gang-related. Therefore, the error – whether characterized as a failure of proof of one of the predicate offenses or failure to instruct that the current offense was a predicate offense – was harmless beyond a reasonable doubt. (citation omitted).

The court then rejected petitioner's argument that the current offense could not qualify as a predicate offense because it was not proved that he was a gang member. The court reasoned that petitioner's argument lacked merit under California law because gang membership is not required to sustain a gang enhancement. The court also concluded that any error was harmless because the evidence clearly established that petitioner was in fact a gang member, a point which was not disputed at trial. Returning to the argument petitioner raises in the instant federal case, the court stated:

> Xabandith also contends his right to due process would be violated by treating the current offense as a predicate offense. However, as stated above, he was put on notice of the elements of the current offense, and that the People would seek to prove it was committed to benefit a street gang. Xabandith relies on People v. Mancebo (2002) 27 Cal.4th 735, but that

decision is distinguishable. There a pleading problem with an enhancement was cured by substituting unpleaded (but proven) facts to support a higher sentence than could have been anticipated by the pleading. In a sharply divided opinion the California Supreme Court concluded this violated due process and could not be deemed harmless because the charging reflected an exercise of prosecutorial discretion. (citations omitted). The court distinguished an earlier case in which the defendant was put on notice of a potential higher sentence but the trial court misinstructed on the necessary findings; the error in that earlier case had been deemed harmless. (citations omitted). Here, no higher punishment, or different enhancement than alleged in the information was imposed, the only change was in the designation of a subsidiary fact to prove the enhancement that was already charged. Therefore, Mancebo does not support defendant's claim.

\* \* \*

Xabandith cites People v. Loeun (1997) 17 Cal.4th 1, in support of his claim that the jury would not use the current offense as a predicate offense. In that case the court noted that the gang expert had testified to a particular prior offense committed by a gang member and that the trial court had cautioned the jury that such offense was offered only as part of the basis of the gang expert's opinion; accordingly, it could not be used as a predicate offense. (citation omitted). Thus, the offense had not been proved beyond a reasonable doubt and could not be used to support the enhancement. Here, the current offense was proved beyond a reasonable doubt.

The state court and respondent agree that error occurred in that the evidence was not sufficient to establish the two predicate offenses alleged in the charging document. Therefore, the question is whether the state court's determination that the error was harmless because the current offense could count as a predicate offense was either contrary to or an unreasonable application of U.S. Supreme Court precedent. While petitioner couches his claim in terms of sufficiency of the evidence, the state court concluded that the error was harmless in the context of either a sufficiency of the evidence argument or a jury instruction error argument. Therefore, this court will also consider both aspects of the question.

///

///

///

///

A. **Sufficiency of the Evidence**

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[2] Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. See id. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993). The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law. See Jackson, 443 U.S. at 324 n.16.

It is clear that, under California law, the current offense of attempted murder can be a predicate offense. See Cal. Penal Code § 186.22(e). It is also clear that California law permits the current offense to constitute a predicate offense. See People v. Gardeley, 14 Cal.4th 605 (1996); People v. Olguin, 31 Cal.App.4th 1355 (1994). Under the standards outline above for a claim based on insufficient evidence, petitioner must demonstrate that no rational jury could have concluded that the charged offense constituted a predicate offense under § 186.22(e). The court concludes that he cannot do so. The evidence clearly established that petitioner committed attempted murder, and petitioner does not argue otherwise. It is also undisputed that petitioner is

---

[2] Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review. A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson. Cf. Bruce v. Terhune, 376 F.3d 950, 959 (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

a gang member. Finally, as the state court observed, because the jury was instructed that the enhancement would apply only if it concluded that the charged crime – attempted murder – was a gang offense (i.e., committed for the benefit of, at the direction of, or in association with a criminal street gang), and because the jury found that the enhancement should apply, it necessarily concluded that the charged offense was a gang offense. Therefore, it does not appear to this court that any error occurred with respect to the sufficiency of the evidence. In other words, the evidence was sufficient to establish that petitioner committed the current offense, which counts as a predicate offense, and that the current offense was gang related and, therefore, was in fact a predicate offense.

On this record, the court cannot say that the state court's determination was contrary to or an unreasonable application of the law to the extent the state court considered whether the evidence was sufficient to establish that the current offense was a predicate offense.[3]

**B.**     **Instructional Error**

It seems that petitioner's stronger argument is that his due process rights were violated because the jury was not instructed properly with respect to predicate offenses. In particular, petitioner quarrels with allowing the jury's conclusion that petitioner committed the current offense to satisfy the predicate offense requirement – which subjected petitioner to the gang enhancement – even though the government never charged the current offense as a predicate offense and the jury was never instructed that the current offense could constitute a predicate offense.

/ / /

/ / /

/ / /

---

[3] Nor does the court see any problem with allowing the current offense to serve as a prerequisite for an enhancement. The situation in this case is akin to a third serious felony counting as the third strike under many state recidivist offender laws, a practice which is permissible.

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). Petitioner's burden is "especially heavy" when the court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Finally, even if constitutional error is found, habeas relief is not warranted if the error was harmless. See Ho v. Carey, 332 F.3d 587, 592 (9th Cir. 2003).

In this case, the court agrees with the state court that petitioner's contention, even when viewed through the lens of instructional error, any error in failing to instruct the jury that the current offense could constitute a predicate offense was harmless.[4] As discussed above, whether the jury was instructed on the point or not, the law in California is clear that the current offense may constitute a predicate offense. The court cannot say that the lack of a specific instruction to this effect had a substantial and injurious impact on the trial. Petitioner's argument would only have merit if: (1) the jury had been misinstructed on attempted murder so as to relieve the prosecution of its burden of proof on the current offense; or (2) the jury had been misinstructed on the requirements for finding that a crime was gang related such that it could constitute a predicate offense. Neither, however, occurred. As the state court observed, the jury was properly instructed on attempted murder, and the jury concluded petitioner had committed that offense. The jury also concluded that the current offense was gang related.

///

---

[4] The court is not entirely convinced that instructional error even occurred. However, for purposes of this analysis, the court will presume, as did the state court, that there was some error.

12

Again, in the context of instructional error standard, the court cannot say that the state court's determination was either contrary to or an unreasonable application of the law.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied; and
2. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 21, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE